**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:14-Civ-20368-KMM**

**HSI CHANG aka MARK CHANG,**

 **Plaintiff,**

**v.**

**JPMORGAN CHASE BANK, N.A.,**

 **Defendant.**

_____/

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, **HSI CHANG AKA MARK CHANG** ("Chang" or the "Plaintiff"), by and through his undersigned counsel, hereby sues Defendant **JPMORGAN CHASE BANK, N.A.** ("JPMorgan" or "the Bank") and alleges as follows:

**NATURE OF THE ACTION**

1.     This action arises from a fraudulent scheme and conspiracy deliberately perpetrated by Charles C. Gordon ("Gordon") to induce Plaintiff Chang to place a special escrow deposit of $750,000 (the "Chang Escrow Funds") into an escrow account at JPMorgan whereupon Gordon immediately misappropriated those funds.    Without the negligence and active, substantial and knowing assistance of JPMorgan, Gordon's fraudulent scheme would not have succeeded and Plaintiff Chang would not have suffered a loss of $750,000.

2.     On February 7, 2014, Gordon entered a plea of guilty to a charge of wire fraud in connection with his fraudulent scheme, acknowledging that there were five victims of that scheme

1

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

from whom he stole at least $3.4 million, and admitting specifically to the fraud he perpetrated against  Plaintiff Chang.

3.      Gordon's scheme was substantially and knowingly assisted by Defendant JPMorgan and would not have succeeded without that assistance.  Gordon established accounts at JPMorgan for the entities used to perpetrate the fraud — OPT Title & Escrow, Inc. ("OPT Title") and Ziggurat, Inc. ("Ziggurat") — in September 2009 with the accounts for OPT Title ultimately bearing the name "Escrow Account."  Several months later, in February 2010, in connection with Gordon's fraudulent scheme, Plaintiff Chang wire transferred a special deposit of $750,000 to JPMorgan with specific instructions that the funds (the "Chang Escrow Funds") were an  "Escrow deposit for Point Hardy-Raffles St. Lucia Project financed by Ziggurat Inc."  JPMorgan accepted the special deposit and acknowledged in its records that it was an escrow deposit into OPT Title's Escrow Account for the express benefit of Point Hardy.   Under Florida law, title to a special escrow deposit — as opposed to a general deposit — remains with the escrow depositor and, by accepting such a deposit, the Bank becomes a bailee, trustee or agent charged with a duty of care in protecting the deposit.

4.      The Bank knew that the "escrow" deposits into OPT Title's Escrow Account were not being properly handled as escrow funds and were, immediately upon receipt, improperly co-mingled and transferred by Gordon into other accounts at the Bank and used by him for personal and operating expenses as well as for payments to other third parties that were intended to perpetuate his fraud.

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
**Second Amended Complaint for Monetary Damages and Other Relief**

5.      The Bank, acting through its employees, actively promoted and participated in Gordon's fraudulent scheme.  On October 11, 2010, the same Bank employee who had prepared and approved the account opening documents for the OPT Title "Escrow Account," issued a letter "to whom it may concern" confirming that OPT Title "has maintained a satisfactory relationship with our bank since September 17, 2009" and stating that the OPT Title "Escrow account currently has deposits in a business checking and savings account in the seven digit amounts."  This letter was patently false since at the time, OPT Title had three accounts at JPMorgan with a combined total balance of $91,820.28 at the start of the month of October 2010 and a combined balance of $21,579.20 at the end of that month with no deposits received during that month.  In addition to the credibility afforded to Gordon's scheme by his use of an Escrow Account at prestigious JPMorgan, Gordon disseminated the letter provided by JPMorgan to Plaintiff Chang to further sustain and delay discovery of his fraudulent scheme and his scheme could not have continued without the active assistance of JPMorgan.

6.      When a subsequent inquiry was made in 2012 on Chang's behalf directly to the Bank as to whether OPT Title's accounts held sufficient funds to return his escrowed funds to him and whether the accounts were the subject of any legal liens, yet another officer of the bank explicitly assured that "all is well" and "in good order" even though she knew the "Escrow Account" into which Chang's funds had been transferred contained approximately $2 at that time.

7.      Although the Bank *knew* that the OPT Title "Escrow Account" was being used for fraudulent purposes, *knew* that the escrowed funds deposited by Plaintiff Chang were designated for

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

a specific purpose, and *knew* that the funds were being misappropriated by Gordon, the Bank took

no action to safeguard the Chang Escrow Funds or to inform or protect Chang.   Furthermore, by

accepting, with no questions asked, Chang's deposit — which was expressly designated as a special

escrow deposit for the benefit of Point Hardy — JPMorgan implicitly confirmed Gordon's

misrepresentation that the Chang Escrow Funds were being held safely in an escrow account at the

Bank.   Such a failure to act on the part of the Bank, alone or combined with its failure to properly

supervise its employees, constituted actionable negligence or gross negligence.   Furthermore,

because the Bank had knowledge (or was willfully ignorant) that Gordon was engaged in fraud and

the conversion of the Chang Escrow Funds and substantially assisted him in perpetrating that fraud

and conversion, the Bank is also liable for aiding and abetting that fraud and conversion.

## PARTIES, JURISDICTION AND VENUE

8.      Pursuant to 28 U.S.C. § 1332(a)(3), this is a civil action in which the matter in

controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between

Plaintiff Chang, a citizen of California, on the one hand, and Defendant JPMorgan, a national

banking association with its principal place of business in Columbus, Ohio, on the other hand.

9.      Plaintiff Chang resides in La Cañada Flintridge, California.

10.     Defendant JPMorgan, a wholly owned subsidiary of JPMorgan Chase & Co., is a

national banking association with its home office located at 1111 Polaris Parkway, Columbus, Ohio.

Accordingly, pursuant to 28 U.S.C. § 1348, JPMorgan is a citizen of Ohio for the purposes of

determining diversity jurisdiction.

4

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

11.     Upon information and belief, JPMorgan is *sui juris* and has sufficient minimum contacts with the State of Florida, the forum State, to satisfy the Due Process Clause of the Fourteenth Amendment to the United States Constitution so that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Specifically, Defendant JPMorgan conducts business within the State of Florida, maintains branch offices in the State of Florida, and/or committed a tortious act within the State of Florida such that it is also subject to the jurisdiction of the courts of Florida pursuant to Section 48.193(1)(a) and (b) of the Florida Statutes.

12.     All conditions precedent to commencing this action have occurred, been satisfied, or have been waived.

13.     Venue is proper in this district because many of the acts, transactions, and occurrences complained of herein occurred in this district.

## PERTINENT NON-PARTIES AND BACKGROUND

14.     At the relevant time in January 2010, Point Hardy Development Co., Ltd. ("Point Hardy") purportedly held rights to a significant block of land in St. Lucia, West Indies, and had reportedly entered into agreements with, among others, the prestigious Raffles hotel chain to develop the property into a luxury golfing resort complete with a Jack Nicklaus Signature Golf Course (the "Raffles St. Lucia Project").  Point Hardy's CEO was Dennis Nardoni ("Nardoni"), a successful developer who had previously developed the St. Lucia Golf and Country Club, among other projects.

15.     At the relevant time, Rehoboth Development & Consulting, Inc. ("RDC"), a now suspended California corporation, and its founder, Chris Lim ("Lim"), purported to be in "the

5

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

business of development and construction management and consulting." RDC and Lim represented

Point Hardy and Nardoni in seeking construction financing for the Raffles St. Lucia Project.

16.     William Lin ("Lin") is an associate of Chris Lim and introduced Lim to Plaintiff

Chang.

17.     ZIGGURAT (Panama), S.A. ("Ziggurat Panama") was a Republic of Panama

corporation formed in 2010 purportedly to engage "in the business of providing financing, loans and

collateralizing financial instruments." The officers of Ziggurat Panama were Gordon, President;

Elias Mena, Treasurer and Secretary, and Michael MacInnis, Vice President.    Before Ziggurat

Panama would obtain and provide funding for any particular project, Ziggurat Panama stated that

a 1% "liquidity deposit" was required to be placed into a special "liquidity deposit account" at

JPMorgan to be held in escrow pending closing of the loan. Ziggurat Panama represented, in its

promotional material, that there was no risk to investors and emphasized that escrowed funds were

safe in the care of JPMorgan:

**Liquidity Requirement:**

Our providers of financial instruments require an Liquidity deposit of 1% of the loan
amount for a Letter of Credit or 1% of the loan amount or a maximum of 750K for
a surety bond. It is one or the other of these instruments that are used for your
projects funding. In most cases the instrument used is a Cash Backed Letter of
Credit.

The liquidity deposit is placed to satisfy the insurance underwriting requirement of
proof of liquidity.

Our liquidity deposit account is set up with JP Morgan Chase in the U.S. Although
our loans are international, our group selected this jurisdiction because it has some
of the strictest financial regulatory bodies worldwide.

6

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

> Opt Title's and escrow has never had any complaints against it of any kind ever.  Our
> Private Equity Fund **has never had a single complaint and has always returned**
> **the entire liquidity deposit to our clients at the appropriate time applicable.**

(Emphasis in original). In addition to Ziggurat Panama, Gordon also controlled, among a number

of other entities, Ziggurat, a now inactive Florida corporation, and Ziggurat (Cayman), Ltd.,

purportedly a Cayman Islands corporation.  Gordon used the three Ziggurat entities interchangeably

as it suited him and, unless necessary for specificity, the three entities shall be referenced herein as

simply "Ziggurat."

18.     OPT Title & Escrow, Inc. ("OPT Title"), is a now defunct Florida corporation.  OPT

Title was controlled by Gordon, who served as the President for both OPT Title and Ziggurat

Panama.  Ziggurat Panama required that OPT Title serve as the "escrow agent" for the required

"liquidity deposit" due on financing transactions and OPT Title maintained several accounts with

Defendant JPMorgan, including one account bearing the number ***********9717. (In accord with

Rule  5.2(a)(4) of the Federal Rules of Civil Procedure, only the last four digits of the account

number are set forth and the account will be referenced herein as the "Escrow Account" or "Account

9717").  JPMorgan consistently accepted wire deposit transfers into Account 9717 that were

specifically described as escrow deposits and were accompanied with express instructions that the

escrow deposit was "for the benefit of" a particular entity.  Escrow deposits are — as the name

indicates — the restricted funds of a third party so JPMorgan knew that escrow deposits into

Account 9717 belonged to a third party and did not belong to OPT Title.   OPT Title also maintained

two other accounts at JPMorgan bearing account numbers ***********6640 ("Account 6640)") and

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

***********6657 ("Account 6657"). The name of the OPT Title accounts in the records of

JPMorgan and appearing on certain of OPT Title account statements was "OPT TITLE & ESCROW

INC ESCROW ACCOUNT." *See, e.g.*, OPT Title Account Statement for period ended February 26,

2010, attached as **Exhibit A** hereto (Bates stamped Freeman-JPMC 462  to Freeman-JPMC 477).

19.      In September 2013, the United States Attorney for the Southern District of Florida

formally notified Gordon that he was the target of a federal criminal investigation and on November

26, 2013, Gordon was charged with one count of wire fraud against Plaintiff Chang.   *See United*

*States of America v. Charles Gordon*, No. 13-03464 (S.D. Fla.), Docket Entry No. 1 (Notification

of Investigative "Target" Status); *United States v. Gordon*, No. 1:13-cr-20881-KMW-1 (S.D. Fla.),

Docket Entry No. 1 (Charging Information).  On February 7, 2014, Gordon entered a guilty plea and,

in connection with that plea, stipulated to, among others, the following facts:

 a.      From January 2010 through March 2013, the defendant, CHARLES C.
GORDON, was the owner and chief executive officer with respect to a Florida
corporation by the name of OPT Title & Escrow, Inc. ("OPT"), as well as a
Panamanian corporation by the name of Ziggurat (Panama), S.A. ("Ziggurat"). These
two firms conducted their operations in tandem through a variety of activities
conducted by the defendant and others acting under the defendant's supervision from
offices within the Southern District of Florida, as well as the Republic of Panama.

 b.      Both Ziggurat and OPT were designed by the defendant to serve a business
model wherein Ziggurat, through its so-called relationships with certain global
banking institutions and "underwriters," could successfully seek out multi-million
dollar working capital loans on behalf of Ziggurat's clients who were in need of such
financing.  For this service, Ziggurat would be paid a commission or fee.

 c.      In order to satisfy so-called borrower "proof of liquidity" which the defendant
claimed to be the result of requirements imposed by the financial institutions with
which Ziggurat was associated, the defendant informed Ziggurat's clients that they
would be required to deposit a sum in escrow. According to the defendant's

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

representations, this sum would be equivalent to a fixed percentage of the total amount of the proposed multi-million dollar loan. Moreover, as further described by the defendant, these "proof of liquidity" funds would be deposited in an escrow account maintained by OPT, the defendant's other company.

d.      In making the purported "proof of liquidity" request, the defendant affirmatively represented to Ziggurat's clients that any such funds thus supplied: (1) would be kept in a J.P. Morgan Chase Bank escrow account in South Florida maintained by OPT; (2) the maximum duration in which the escrowed funds would be held would be no longer than ninety days; (3) the escrowed funds would not be removed from the account or used for purposes other than to remain on deposit (so as to provide the required "proof of liquidity"); and (4) all funds thus placed in escrow would be returned in the event that no project financing was successfully obtained within the prescribed ninety-day period.

e.      Through the above-described business model, the defendant brought in five separate individual clients, each of whom were in need of multi-million dollar financing in connection with a variety of real estate development projects and other ventures, including the establishment of a pharmaceutical business in Africa and the construction of a church in Miami-Dade County, Florida. According to the defendant, as detailed in later interviews which he gave to Special Agents of the F.B.I., he obtained at least $3.4 million in escrowed funds from these clients in this manner.

f.      Within a very short period of time after the defendant first induced his firm's clients to provide the requested "proof of liquidity" funds which was usually accomplished by wire transfer to OPT's escrow account, the defendant commenced misappropriating these funds. . . .The defendant further admitted that the majority portion of these fraudulently diverted funds were used for Ziggurat's own operating expenses or diverted to accounts over which he maintained control for eventual payments to third parties for purchases and expenses of a purely personal nature. Since making these admissions, F.B.I. personnel have confirmed the amounts of the funds fraudulently diverted to be at least $3.6 million.

g. After the defendant made the above disclosures, the F.B.I. initiated an investigation into the matter. Five of the defendant's former clients were contacted and each confirmed that the defendant had fraudulently induced them to supply "proof of liquidity" funds in the manner described and then subsequently "stole" most or all of the funds they had supplied. . . .

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

h. As alleged in the Information, one such instance in which a victim was induced by the defendant to supply funds through this fraudulent scheme was on February 16, 2010. On this occasion, the defendant caused victim "M.C." to conduct a wire transfer transaction wherein funds in the amount of $750,000, which were believed by the victim to be necessary for the purpose of establishing "proof of liquidity" were wire transferred from M.C.'s East West Bank account in Alhambra, California to OPT'S Chase Bank account in the Southern District of Florida.

*United States v. Gordon*, No. 1:13-cr-20881-KMW-1 (S.D. Fla.), Docket Entry No. 15 (Stipulated Statement of Facts by Defendant Charles C. Gordon).

## GENERAL ALLEGATIONS

20.    As Gordon has now admitted, Ziggurat Panama and OPT Title were not legitimate entities but were instrumentalities of his fraudulent scheme. Critical to the success of that scheme was an "escrow account" in an established financial institution into which the required "liquidity deposit" could ostensibly be deposited for safekeeping. In September 2009, Gordon opened three new accounts in the name of OPT Title at the Royal Oaks Miami Lakes branch (Branch No. 741786) of JPMorgan. Two of the three OPT Title accounts, Accounts 6657 and 6640, were used by Gordon as operating accounts while the third account, Account 9717, was the "Escrow Account" into which victims of his scheme transferred escrow deposits.

21.    JPMorgan knew — by virtue of the name "OPT Title & Escrow, Inc." — that OPT Title purported to be a professional title and escrow company and that third parties would entrust escrowed funds to OPT Title. By accepting special restricted deposits into Account 9717 that were specifically designated as escrow deposits into an "Escrow Account," JPMorgan held the account out as a *bona fide* escrow account. Since an escrow by definition involves the restricted funds of a

10

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

third party, if Account 9717 was not an escrow, trust or fiduciary account designated under Florida law, JPMorgan had a duty to either reject the escrow deposit or to advise the escrow depositor that the account was not in fact an escrow account.

22.     Under Florida law, "escrow" is defined as "[a] legal document or property delivered by a promisor to a third party to be held by the third party for a given amount of time or until the occurrence of a condition, at which time the third party is to hand over the document or property to the promisee" and, accordingly, escrowed funds are, by definition, *restricted* funds.  Furthermore, under Florida law, it is well established that legal title to funds placed in an escrow account remains with the transferor until the occurrence of the condition specified in the escrow agreement. Consequently, by permitting OPT Title to open and maintain an  "Escrow Account" and accepting escrow deposits into that account, JPMorgan knowingly and substantially assisted in Gordon's fraud and conversion.

23.     The OPT Title Escrow Account was opened at the Royal Oaks branch of JPMorgan on or about September 17, 2009.  Between September and December 2009, there were four escrow deposits into Account 9717 totaling over $1.1 million.   Each time one of the escrow deposits was received into Account 9717, those funds were immediately transferred out of the account and into one of the two other accounts maintained by OPT Title at JPMorgan.  The "escrow" funds were then dissipated by Gordon for a variety of personal and business expenditures and, by virtue of its knowledge of the account transactions,  JPMorgan had actual knowledge that those "escrow" funds were being misappropriated by its customer, OPT Title, and its President, Charles Gordon.

11

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

24.     In permitting Gordon and OPT Title to open and maintain an Escrow Account and then accepting restricted special escrow deposits from third parties into OPT Title Account 9717, JPMorgan — which has a legal obligation to know its customer — implicitly represented that OPT Title was *a bona fide* Escrow Agent and that Account 9717 was a *bona fide* Escrow Account. Because of the nature of escrow funds — which by their nature belong to a third party — JPMorgan knew that third parties would rely on its conduct when wiring escrow deposits to Account 9717.

25.     When Gordon opened the three OPT Title accounts at JPMorgan in September 2009, he deposited $10,000 into Account 6640, $1,000 into Account 6657 (which deposit was invalid and was returned), and $100 into Account 9717, the account used for "escrow" deposits.  During the five months that followed the opening of the accounts, there were perhaps a half dozen deposits into OPT Title's three accounts and nearly all of the deposits were designated as special escrow deposits into Account 9717.   Each of the special escrow deposits was immediately transferred out of Account 9717 and into one of the other two OPT Title accounts and from those accounts, the funds were further transferred (often overseas) or withdrawn with many of the withdrawals and transfers going to Gordon personally or for his business and personal expenses.  As a result of processing the transfers and withdrawals, as well as preparing the monthly statements for the OPT Title accounts, JPMorgan had actual knowledge (or chose to remain willfully ignorant) that Gordon was misappropriating and co-mingling funds designated as escrow funds and was diverting those funds for his personal use.  Thus, prior to February 2010, there had been numerous past discrepancies in

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

the OPT Title accounts that demonstrated that escrowed funds were being improperly converted and misappropriated.

26.     Notably, a number of the escrow transfers into OPT Title's Account 9717 were international transfers and were, accordingly, subject to heightened scrutiny by JPMorgan.

27.     In or about February 2010, Plaintiff Chang was the victim of the fraudulent scheme perpetrated by Gordon and others which ultimately resulted in Chang's loss of $750,000. A critical component in the success of the fraudulent scheme was the "requirement" that Chang place $750,000 into OPT Title's "Escrow Account" at JPMorgan which "requirement" lent the fraudulent scheme an air of legitimacy and provided Chang with assurance as to the safety of his funds. Had OPT Title's "Escrow Account" been with a less prestigious bank or a bank located in a foreign location, Chang would not have transferred $750,000 into that account.

28.     In or about January 2010, Lin introduced Chang to Lim, who approached Chang about posting a $750,000 escrow "liquidity" deposit in order to enable Point Hardy to obtain up to $228 million in construction funding for the Raffles St. Lucia Project from Ziggurat. Lim told Chang that the project was so promising that funding had virtually been guaranteed by Ziggurat but that if the funding did not close within 90 days, Chang's funds would be returned to him from escrow so there was no risk of any loss to him. Indeed, Chang was expressly promised by OPT Title that his funds would remain intact, would not be used for any purpose other than satisfying the lending requirements of Ziggurat on behalf of Point Hardy, and would not be paid to anyone other than him.

13

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

Furthermore, Chang was promised that, if the funding from Ziggurat did successfully close, he would

receive, in addition to the return of his $750,000, a return of up to an additional $800,000.

29.     On or about January 29, 2010, relying in good faith on the representations of Gordon

and his cohorts and the understanding that the $750,000 escrow deposit he posted as the "liquidity

deposit" required by Ziggurat would be held safely in OPT Title's Escrow Account at JPMorgan,

would be used for no other purpose, and would be returned if the financing transaction did not close

within 90 days,  Plaintiff Chang agreed to place $750,000 of his funds into OPT's Escrow Account

at JPMorgan for the benefit of Point Hardy and entered into an Escrow Agreement with OPT Title

acting as Escrow Agent.

30.     On February 16, 2010, Chang issued outgoing wire transfer instructions directing the

transfer of $750,000 from his account at East West Bank to be deposited into Account 9717 of OPT

Title at JPMorgan.  On the wire transfer form, Chang expressly instructed that the transfer was an

"Escrow deposit for Point Hardy-Raffles St. Lucia Project financed by Ziggurat Inc."  If JPMorgan

had refused the deposit on those terms, Chang would not have made the deposit.

31.     On that same date — February 16, 2010 —  JPMorgan acknowledged receipt and

acceptance of the Chang Escrow Funds and expressly recognized on the statement it prepared for

OPT Title that the transfer was an escrow deposit into OPT Title's escrow account for the benefit

of Point Hardy.  *See* OPT Title Account Statement for period ended February 26, 2010, attached as

**Exhibit A** hereto (Bates stamped Freeman-JPMC 462  to Freeman-JPMC 477), at Freeman-JPMC

469.  JPMorgan knew that the transfer by Chang was *not* a general deposit of funds but was a special

14

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

deposit of restricted funds into a designated escrow account for the specific benefit of the Point

Hardy - Raffles St. Lucia Project and JPMorgan received and accepted the deposit of the Chang

Escrow Funds on those terms. *Id.* By its conduct in knowingly receiving and accepting specially

designated escrow funds for deposit into Account 9717, the Bank impliedly misrepresented that

Account 9717 was a legitimate "Escrow Account" at JPMorgan and that the Bank had no knowledge

of OPT Title's history of misappropriating and co-mingling escrowed funds.

32.     Despite Chang's explicit instruction that the Chang Escrow Funds were escrow funds

for the benefit of the Point Hardy - Raffles St. Lucia Project, those funds were immediately

transferred, by online transfer, out of the OPT Title "Escrow Account" (Account 9717) and into

Account 6640. *See* OPT Title Account Statement for period ended February 26, 2010, attached as

**Exhibit A** hereto (Bates stamped Freeman-JPMC 462 to Freeman-JPMC 477), at Freeman-JPMC

469.   After the Chang Escrow Funds were transferred out of  Account 9717, the balance in that

account was $106.  And prior to the transfer of the $750,000 Chang Escrow Funds from the Escrow

Account to Account 6640, Account 6640 had a balance of less than $6,000.   On the following day,

February 17, 2010, $500,000 of the Chang Escrow Funds were transferred from Account 6640 to

Account  6657.  Thus, JPMorgan knew that funds specifically designated as "escrow" funds were

being immediately misappropriated and co-mingled by its customer, OPT Title, and that those funds

did not remain safely in Account 9717 pending fulfillment of the escrow conditions.

33.     Although JPMorgan knew that special escrow deposits into OPT Title Account 9717

were being co-mingled and misappropriated by Gordon, JPMorgan failed to reject Chang's special

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

escrow deposit, never contacted Chang, requested further information from him, or took any steps

to safeguard or protect the Chang Escrow Funds.

34.     When 90 days passed and the Chang Escrow Funds had not been returned to him and

the Point Hardy-Ziggurat financing had not closed, Chang agreed to a number of escrow extensions,

always with the understanding that his Funds remained safely protected in OPT Title's Escrow

Account at JPMorgan.   After several escrow extensions, Chang sought direct assurance from the

Bank that OPT Title had sufficient funds to return his $750,000 should the Ziggurat funding fail to

close.

35.     On October 11, 2010, an employee of JPMorgan, acting within the scope of her

employment and with the apparent authority of the Bank, prepared and executed a letter directed "to

whom it may concern" stating:

> This is to inform that **OPT Title & Escrow, Inc** is currently a client of our banking
> institution, and has maintained a satisfactory relationship with our bank since
> September 17, 2009
>
> **OPT Title & Escrow, Inc** — Escrow account currently has deposits in a business
> checking and savings account in the seven digit amounts.
> . . .

This letter — written on the Bank's stationery —  was patently false since, at the time, OPT Title

did ***not*** have "deposits in a business checking and savings account in the seven digit amounts" and

could not have refunded Chang's $750,000 escrow deposit. (The bank statement for October 2010

indicates that the three OPT Title accounts began the month with a combined balance of $91,820.28

and ended the month with a combined balance of $21,579.20. During the month, there were no

16

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

deposits into the accounts.).  Nonetheless, this false lulling letter from the Bank prevented Chang

from discovering the fraud and perpetuated the fraudulent scheme such that ultimately, Gordon's

fraud ensnared a number of other escrow depositors.

36.     The Bank's false lulling letter of October 11, 2010 bought Gordon more time and he

contrived further excuses to explain the delay in obtaining the Ziggurat funding.  Chang repeatedly

sought confirmation that his escrowed funds were safely in OPT Title's Escrow Account at

JPMorgan and Gordon assured him that the Chang Escrow Funds remained on deposit.

37.     On November  9, 2012, Lin sent an email to an Assistant Vice President at the

JPMorgan branch office in Royal Oaks where Gordon had opened the OPT Title accounts, again

seeking confirmation that OPT Title had sufficient funds to cover a refund of the Chang Escrow

Funds.  Lin requested the following information:

> Dear Ms. [Vice President],
>
> I'm glad you were able to confirm with Mr. Gordon on my inquiry. Rather than
> wiring funds into OPT Title, we actually have wired $750,000 into OPT Title
> account #[9717] on Feb. 16, 2010. We would like to know if OPT's incoming
> account and any other account have the balance to cover this amount in case of a
> refund is requested. Furthermore, please advise if any outstanding Lis Pendens is
> looming over the account. Thank you.
>
> Best regards,
>
> William Lin

(Full account number and name of Vice President redacted).

38.     On November 13, 2012, the Vice President, acting within the scope of her

employment and with the apparent authority of the Bank,  responded in an email, with a copy to

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
**Second Amended Complaint for Monetary Damages and Other Relief**

"cgordon@ziggurat.inc," as follows:

> Good morning Mr. Lin,
>
> All is well with the account and there don't appear to be any Lis Pendens. Everything is in good order.
>
> Thank you,
>
> [Name Redacted]
> Assistant Vice President
> Business Banker

39.     On November 1, 2012, OPT Title Account 6640 had a negative balance of $419.00, Account 6657 had a negative balance of $6.00, and the Escrow Account had a positive balance of $2.01.  In total, the three OPT Title accounts had a negative balance of $422.91.  There were no deposits into any of the three accounts during the month of November 2012 and, after incurring various service fees, the three OPT Title accounts ended the month with a negative balance of $471.99.

40.     At the time that the Vice President responded to Lin's inquiry about whether there was sufficient funds in OPT Title's accounts to cover a refund of the $750,000 Chang Escrow Funds, the OPT Title accounts had a total negative balance and did not have $750,000 to refund the Chang Escrow Funds.  Yet, the Vice President, acting on behalf of JPMorgan, knowingly and falsely represented to Lin that all was "in good order."

41.     As a national bank, JPMorgan is subject to and must comply with, among other laws, the Bank Secrecy Act ("BSA") and the Anti-Money Laundering ("AML") provisions of the Patriot Act which require banks to maintain controls against money laundering and report suspicious

18

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.,*
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

activities to the authorities. Accordingly, in order to comply with its legal obligations, JPMorgan

is required to know its customers and to monitor customer accounts for unusual activity. JPMorgan

is required when opening a business account to, among other things, obtain from the customer

information as to the nature of the business, the purpose of the account (including why a customer

would open multiple accounts under a single name), and the expected transactions in the account.

Certain characteristics, including transactions involving large round-sum transactions, layering (the

transfer of funds between accounts for no apparent purpose), structuring (customer conducts multiple

transactions in one day in manner that appears to serve no purpose), accumulation of large balances

that are then transferred to other accounts or out of the United States, transfers of funds among

accounts for no apparent reason, and frequent large disbursements to and from unrelated third parties

are considered "red flags" prompting further investigation by a bank.

42.     JPMorgan has, during the past decade, repeatedly been sanctioned for failing to

implement and adhere to appropriate standards relating to the monitoring of customer accounts for

fraudulent activity. JPMorgan, as the primary banker for Bernard Madoff and his Ponzi-scheme

fund, Bernard L. Madoff Investment Securities, LLC ("BMIS"), was charged with actual knowledge

(or the conscious avoidance of such knowledge) of the fraud being perpetrated by Madoff and BMIS

well before it was discovered by authorities in December 2008, as well as similar accusations

involving other Ponzi schemes run by other JPMorgan customers. On January 7, 2014, the United

States Attorney's Office, in conjunction with the Federal Bureau of Investigation, "announced

criminal charges against JPMorgan Chase Bank N.A. (JPMorgan or the bank), consisting of two

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

felony violations of the Bank Secrecy Act, in connection with the bank's relationship with Bernard

L. Madoff Investment Securities (Madoff Securities)." Department of Justice, Press Release, Jan.

7, 2014, available at www.justice.gov.  The announcement also stated that the Bank had agreed to

a significant penalty and that the criminal prosecution would be deferred:

> Also today, Mr. Bharara announced an agreement (the agreement) with JPMorgan, under which the bank agreed to accept responsibility for its conduct by stipulating to the accuracy of an extensive statement of facts; to pay a $1.7 billion penalty to the victims of the Madoff fraud through a parallel civil forfeiture complaint; to refrain from future criminal conduct and cooperate fully with the government; and to continue reforms of its Bank Secrecy Act (BSA)/Anti-Money Laundering compliance program. The criminal charges are contained in a two-count felony Information (the information). Assuming the bank's continued compliance with the agreement, the government has agreed to defer prosecution on the information for a period of two years, after which time the government will seek to dismiss the charges.
>
> Manhattan U.S. Attorney Preet Bharara said, "Today, the largest financial institution in the country stands charged with two criminal offenses. Institutions, not just individuals, have an obligation to follow the law and to police themselves. They must exercise due care not only with their own money but with other people's money also. In this case, JPMorgan connected the dots when it mattered to its own profit but was not so diligent otherwise.  . . .."

*Id.*  In separate actions, the United States Department of the Treasury, Office of the Comptroller of

the Currency, and the Financial Crimes Enforcement Network  announced that they had also reached

agreements with JPMorgan. *Id.*  On March 21, 2014, a district court approved a settlement whereby

JPMorgan agreed to pay $218 million to resolve class actions arising from its role in the Madoff

Ponzi scheme.  *Hill et al v. JPMorgan Chase & Co.*, No. 11-07961 (S.D.N.Y.).

43.     In January 2013, the Office of the Comptroller of the Currency ("OCC") found that

the Bank had "deficiencies" in its BSA/AML compliance program and made an express finding that

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

"[t]he Bank did not develop adequate due diligence on customers, particularly in the Commercial and Business Banking Unit, a repeat problem, and failed to file all necessary Suspicious Activity Reports ('SARs') related to suspicious customer activity." OCC Consent Order, No. AA-EC-13-04, at 2-3 (Jan. 14, 2013).

44.     JPMorgan's cavalier attitude and longstanding failure to maintain adequate customer due diligence and account monitoring is inexcusable given its status as the nation's largest financial institution.  In the present matter, either JPMorgan complied with its BSA/AML obligations and obtained information about OPT Title and its so-called fraudulent "business model" or it failed to comply with those obligations and allowed OPT Title to nonetheless open and maintain an Escrow Account at the Bank.  While the Chang Escrow Funds — constituting $750,000 — may pale in comparison to the billions stolen by other JPMorgan customers, the wrongdoing by the Bank is particularly egregious since the OPT Title Escrow Account was not a mere conduit for the proceeds of a customer's fraud but was a key instrumentality of that fraud and, since by definition escrowed funds belong to a third party, the Bank had actual knowledge that its customer was perpetrating a fraud.  Yet the Bank actively assisted Gordon's scheme by accepting, among others, Chang's restricted escrow deposit, and later falsely stating that OPT Title had sufficient funds on account to refund Chang's $750,000 escrow deposit when in fact OPT Title did not have such funds.

45.     In addition to the allegations set forth above, the following facts establish — or, at the least, create a plausible inference — that actual knowledge of Gordon's fraud can be imputed to the Bank by virtue of the conduct of its employees acting within the scope of their duties and that

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
**Second Amended Complaint for Monetary Damages and Other Relief**

the Bank, acting through its employees, substantially assisted in that fraud:

A.   Bank employee Olga Padgett-Perdomo prepared the paperwork to open the OPT Title and Ziggurat accounts at JPMorgan in September 2009.  *See* Account Opening documents, attached hereto as **Exhibit B**.

B.   On information and belief, Olga Padgett-Perdomo permitted Gordon to name the OPT Title accounts as "Escrow Account" even though none of the OPT Title accounts complied with the Bank's procedures for opening an authorized escrow account.

C.   Court records indicate that in April 2010, a Notice of Lis Pendens was filed in the Circuit Court for Seminole County against Olga Padgett-Perdomo by a mortgagee seeking to foreclose on a property; on July 21, 2010, a Final Judgment of foreclosure was entered against Olga Padgett-Perdomo in that proceeding; and on October 7, 2010, a Satisfaction of Mortgage was filed. *See* **Composite Exhibit C** attached hereto.

D.   Roland Larsen, the President of Sharpe Resources, Inc., an entity involved with the fraud perpetrated by Gordon on another victim, has executed a sworn affidavit stating that "Gordon told me that he [Gordon] had a girl at JPMorgan that he paid One Hundred Thousand Dollars ($100,000.00) in cash as a 'loan' to help her with her residential loan payments." *See* Affidavit of Roland M. Larsen, attached hereto as **Exhibit D**.

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.,*
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

E.      On June 14, 2010, Gordon made an online wire transfer of $100,000 in cash from OPT Title Account No. 6640 to Infinit Management, LLC, of Miami Beach.  *See* **Exhibit E** hereto, at page 5.

F.      A FEIN Record obtained from Westlaw indicates that "Olga L. Perdomo" is the principal of Infinit Management, LLC, of Miami Beach.  *See* **Exhibit F** hereto.

G.      On October 11, 2010, Padgett-Perdomo authored the email, referenced in paragraph 35 above, falsely stating that OPT Title "Escrow account currently has deposits in a business checking and savings account in the seven digit amounts."  *See* **Exhibit G** hereto.

46.      Despite demands by the Plaintiff and his counsel, Defendant JPMorgan has failed to return the Chang Escrow Funds to the Plaintiff and Plaintiff has, consequently, suffered significant damages.

## COUNT I - NEGLIGENCE

47.      The Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 46 as if fully set forth herein.

48.      The Bank owed a duty of care to Chang arising from its acceptance of Chang's specially restricted escrow deposit into OPT Title Escrow Account 9717.  The Bank knew that the account bore the title of "Escrow Account" and knew that Chang had issued express instructions when transmitting the wire transfer of $750,000 stating that it was an "Escrow deposit for Point

23

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.,*
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

Hardy-Raffles St. Lucia Project financed by Ziggurat Inc."  By knowingly receiving and accepting

the deposit of the Chang Escrow Funds with Chang's specific instructions evident at the time of the

deposit, the Bank created a special deposit under Florida law.  As a special deposit, title to the Chang

Escrow Funds remained with Chang, and JPMorgan became a bailee, trustee or agent owing a duty

to Chang.

49.     In the alternative, if OPT Title Escrow Account 9717 was not in fact considered by

JPMorgan to be a legally authorized "escrow" account, but was instead considered by the Bank to

be an ordinary commercial checking or savings account, then JPMorgan had a duty to reject the

deposit of the Chang Escrow Funds since Chang had specifically instructed the Bank that those funds

were an "escrow deposit" (or at the very least to inquire of him as to why he was describing his

deposit as an "escrow deposit").  If the Bank considered OPT Title Account 9717 to be an ordinary

commercial account, then it had special knowledge of material facts to which Chang did not have

access and knew that OPT Title and Gordon were perpetrating a fraud by falsely representing to third

parties that the account was an Escrow Account when in fact it was not.  By its acceptance of the

Chang Escrow Funds, the Bank implicitly — and falsely — represented that OPT Title did indeed

have an established "Escrow Account" at the Bank and that the Chang Escrow Funds were being

held by the Bank as escrowed funds.

50.     The Bank knew that the Chang Escrow Funds were immediately misappropriated by

transfer out of OPT Title Account 9717 into two other OPT Title accounts from which accounts

those Funds were soon disbursed to or for the benefit of Gordon.  Yet, despite such knowledge, the

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

Bank took no action to safeguard the Chang Escrow Funds and substantially assisted in the misappropriation, theft and conversion of the Chang Escrow Funds by processing the improper transfers and failing to alert Chang.

51.     JPMorgan has a duty to know its customer and to assess what is appropriate and suitable activity in an account, particularly when it knows that a customer has designated an account to be an "Escrow Account" for the purpose of receiving transfers of funds and is holding the "Escrow Account" out as a special trust account to third parties.  JPMorgan either complied with its obligation to know its customer — and knew of Gordon's so-called "business model" using OPT Title and Ziggurat and knew that escrowed funds were being misappropriated — and still accepted "escrow deposits" on OPT Title's behalf, or failed to know its customer and permitted its customer to falsely represent that it had a legitimate "escrow account" at JPMorgan.   In either event, JPMorgan's conduct was negligent.

52.     JPMorgan also has a duty to supervise its employees and to establish safeguards preventing the use of accounts at the Bank in perpetrating fraudulent schemes such as the one perpetrated by Gordon that harmed Plaintiff Chang.  JPMorgan abdicated that responsibility and, indeed, two different employees at JPMorgan affirmatively attested to OPT Title's good standing as a JPMorgan customer which not only lent further credence to Gordon's scheme but prevented detection of that scheme.

**WHEREFORE**, Plaintiff Chang, by and through his undersigned counsel, respectfully requests that the Court enter a judgment in his favor and holding Defendant JPMorgan liable for:

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

(A)     compensatory damages of $750,000 sustained by Plaintiff as a result of Defendant's

negligence;

(B)     pre- and post-judgment interest Sections 687.01 and 55.03 of the Florida Statutes,

Fla. Stat. §§ 687.01 and 55.03;

(C)     costs; and

(D)     such other and further relief as the Court deems just and equitable.

## COUNT II - GROSS NEGLIGENCE

53.     The Plaintiff realleges and incorporates by reference the allegations set forth above

in paragraphs 1 through 46 as if fully set forth herein.

54.     The Bank owed a duty of care to Chang arising from its acceptance of Chang's

specially restricted escrow deposit into OPT Title Escrow Account 9717.  The Bank knew that the

account bore the title of "Escrow Account" and knew that Chang had issued express instructions

when transmitting the wire transfer of $750,000 stating that it was an "Escrow deposit for Point

Hardy-Raffles St. Lucia Project financed by Ziggurat Inc."  By knowingly receiving and accepting

the deposit of the Chang Escrow Funds with Chang's specific instructions evident at the time of the

deposit, the Bank created a special deposit under Florida law.  As a special deposit, title to the Chang

Escrow Funds remained with Chang, and JPMorgan became a bailee, trustee or agent owing a duty

to Chang.

55.     In the alternative, if OPT Title Escrow Account 9717 was not in fact considered by

JPMorgan to be a legally authorized "escrow" account, but was instead considered by the Bank to

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

be an ordinary commercial checking or savings account, then JPMorgan had a duty to reject the

deposit of the Chang Escrow Funds since Chang had specifically instructed the Bank that those funds

were an "escrow deposit" (or at the very least to inquire of him as to why he was describing his

deposit as an "escrow deposit"). If the Bank considered OPT Title Account 9717 to be an ordinary

commercial account, then it had special knowledge of material facts to which Chang did not have

access and knew that OPT Title and Gordon were perpetrating a fraud by falsely representing to third

parties that the account was an Escrow Account when in fact it was not. By its acceptance of the

Chang Escrow Funds, the Bank implicitly — and falsely — represented that OPT Title did indeed

have an established "Escrow Account" at the Bank and that the Chang Escrow Funds were being

held by the Bank as escrowed funds.

56.     The Bank knew that the Chang Escrow Funds were immediately misappropriated by

transfer out of OPT Title Account 9717 into two other OPT Title accounts from which accounts

those Funds were soon disbursed to or for the benefit of Gordon. Yet, despite such knowledge, the

Bank took no action to safeguard the Chang Escrow Funds and substantially assisted in the

misappropriation, theft and conversion of the Chang Escrow Funds by processing the improper

transfers and failing to alert Chang.

57.     JPMorgan has a duty to know its customer and to assess what is appropriate and

suitable activity in an account, particularly when it knows that a customer has designated an account

to be an "Escrow Account" for the purpose of receiving transfers of funds and is holding the "Escrow

Account" out as a special trust account to third parties. JPMorgan either complied with its obligation

27

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

to know its customer — and knew of Gordon's so-called "business model" using OPT Title and Ziggurat and knew that escrowed funds were being misappropriated — and still accepted "escrow deposits" on OPT Title's behalf, or failed to know its customer and permitted its customer to falsely represent that it had a legitimate "escrow account" at JPMorgan.   In either event, JPMorgan's conduct was negligent.

58.    JPMorgan also has a duty to supervise its employees and to establish safeguards preventing the use of accounts at the Bank in perpetrating fraudulent schemes such as the one perpetrated by Gordon that harmed Plaintiff Chang.  JPMorgan abdicated that responsibility and, indeed, two different employees at JPMorgan affirmatively attested to OPT Title's good standing as a JPMorgan customer which not only lent further credence to Gordon's scheme but prevented detection of that scheme.

59.    Given the scope of the Bank's participation in numerous well-publicized frauds, its repeated failure to conduct adequate due diligence on customers, and its systemic failure to implement adequate monitoring and controls, the Bank's conduct with regard to the Chang Escrow Funds was so reckless or wanting in care that it constituted a conscious disregard or indifference to Chang's rights and to the safety of those Funds entrusted to the Bank.

60.    In addition, the Bank's grossly negligent conduct was willful, wanton, and malicious, and, consequently, Plaintiff seeks punitive damages.

**WHEREFORE**, Plaintiff Chang, by and through his undersigned counsel, respectfully requests that the Court enter a judgment in his favor and holding Defendant JPMorgan liable for :

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.,*
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

(A)     compensatory damages of $750,000 sustained by Plaintiff as a result of Defendant's

gross negligence;

(B)     punitive damages;

(C)     pre- and post-judgment interest Sections 687.01 and 55.03 of the Florida Statutes,

Fla. Stat. §§ 687.01 and 55.03;

(D)     costs; and

(E)     such other and further relief as the Court deems just and equitable.

### COUNT III - AIDING AND ABETTING FRAUD

61.     The Plaintiff realleges and incorporates by reference the allegations set forth above

in paragraphs 1 through 46 as if fully set forth herein.

62.     Gordon gained possession of $750,000 belonging to Plaintiff Chang by the use of

fraud and had a preconceived purpose to deprive him of those funds and to appropriate those funds.

63.     Critical to the success of the fraudulent scheme was the "requirement" that the victim

of the scheme — Plaintiff Chang — transfer the Chang Escrow Funds into an "escrow account" at

a respected financial institution.

64.     Indeed, Gordon's scheme would never have been possible had JPMorgan not

permitted Gordon to open and maintain accounts designated as the OPT Title "Escrow Account" and

then accepted specifically designated "escrow deposits."    JPMorgan either complied with its

BSA/AML obligation to know its customer — and knew of Gordon's so-called "business model"

using OPT Title and Ziggurat and knew that escrowed funds were being misappropriated — and still

29

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

accepted "escrow deposits" on OPT Title's behalf, or failed to know its customer and knowingly permitted OPT Title to falsely represent that it had a legitimate "escrow account" at JPMorgan while accepting escrow deposits on OPT Title's behalf.

65.     Without such knowing and substantial assistance by JPMorgan, Gordon's fraudulent scheme would not have deprived Plaintiff Chang and other victims of their purportedly escrowed funds.

66.     In addition, JPMorgan knew that escrow funds deposited into OPT Title Account 9717 were not being handled as escrow funds but were always immediately withdrawn from Account 9717 and transferred to OPT Title's other two accounts at the Bank where those funds were  co-mingled and used for a variety of Gordon's personal expenses.

67.     By receiving and accepting the Chang Escrow Funds as a deposit into Account 9717, JPMorgan knowingly and substantially assisted Gordon's fraudulent scheme by implicitly misrepresenting that OPT Title was a *bona fide* escrow agent, that Account 9717 was a *bona fide* escrow account, and that the Chang Escrow Funds would be maintained as *bona fide* escrowed funds pending the closing of the Ziggurat financing.

68.     Furthermore, by its actions in issuing a false statement that OPT Title had a "seven digit" balance in October 2010 when OPT did not have such a balance and, in fact, did not have a balance remotely close to a "seven digit" balance, and issuing further a further false statement of OPT Title's good standing in 2012, JPMorgan assisted Gordon in perpetuating his scheme so that

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

it ensnared other victims and gave Gordon more time to dissipate the funds he had obtained with his fraud.

69.     In addition to the foregoing, by virtue of the numerous irregularities in the opening of the OPT Title accounts and in the transactions in the OPT Title accounts, JPMorgan had actual knowledge (or chose to remain willfully ignorant which is equivalent under the law to actual knowledge) that the accounts were being used as part of a fraudulent scheme.

70.     Defendant JPMorgan's conduct in aiding and abetting Gordon's fraud was willful, wanton, and malicious, and, consequently, Plaintiff seeks punitive damages.

**WHEREFORE**, Plaintiff Chang, by and through his undersigned counsel, respectfully requests that the Court enter a judgment in his favor and holding Defendant JPMorgan liable for :

(A)     compensatory damages of $750,000 sustained by Plaintiff as a result of Defendant's aiding and abetting the fraud perpetrated by Gordon;

(B)     punitive damages;

(C)     pre- and post-judgment interest Sections 687.01 and 55.03 of the Florida Statutes, Fla. Stat. §§ 687.01 and 55.03;

(D)     costs; and

(E)     such other and further relief as the Court deems just and equitable.

## COUNT IV - AIDING AND ABETTING CONVERSION

71.     The Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 46 as if fully set forth herein.

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
CASE NO. 1:14-Civ-20368-KMM
Second Amended Complaint for Monetary Damages and Other Relief

72.     Gordon knowingly obtained or used, or endeavored to obtain or use, $750,000 belonging to Plaintiff Chang with the intent to permanently deprive him of his right to those funds.

73.     By receiving and accepting the Chang Escrow Funds as a deposit into Account 9717, JPMorgan knowingly and substantially assisted Gordon's conversion by implicitly misrepresenting that OPT Title was a *bona fide* escrow agent, that Account 9717 was a *bona fide* escrow account, and that the Chang Escrow Funds would be maintained as *bona fide* escrowed funds pending the closing of the Ziggurat financing.

74.     In reliance on the fraudulent representations of Gordon and his cohorts, as well as the implicit misrepresentation made by JPMorgan when it received and accepted Chang's special deposit of escrow funds, Plaintiff Chang transferred $750,000 to OPT Title Account 9717 at JPMorgan for the express benefit of Point Hardy - Raffles St. Lucia with the understanding that those Chang Escrow Funds would be returned to him if the Ziggurat Panama financing did not close within 60 days.   The Chang Escrow Funds were not returned to Chang but were instead immediately converted.

75.     JPMorgan had actual knowledge (or was willfully ignorant) that Gordon was engaged in the conversion of the Chang Escrow Funds since those Funds were immediately transferred out of OPT Title Account 9717 upon receipt into OPT Title's two other accounts by Gordon. Furthermore, despite the Bank's knowledge that Chang had specifically directed that the Chang Escrow Funds were for the benefit of Point Hardy - Raffles St. Lucia, none of the Chang Escrow

32

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

Funds were disbursed to Point Hardy - Raffles St. Lucia and all of those Funds were disbursed by Gordon to transferees other than Point Hardy - Raffles St. Lucia, including to Gordon himself.

76.     Despite actual knowledge (or willful ignorance) of the conversion of the Chang Escrow Funds, the Bank took no action to safeguard the Chang Escrow Funds and substantially assisted in the misappropriation, theft and conversion of the Chang Escrow Funds by processing the improper transfers and by failing to alert Chang.

77.     In addition, the Bank's conduct in aiding and abetting conversion was willful, wanton, and malicious, and, consequently, Plaintiff seeks punitive damages.

**WHEREFORE**, Plaintiff Chang, by and through his undersigned counsel, respectfully requests that the Court enter a judgment in his favor and holding Defendant JPMorgan liable for:

(A)     compensatory damages of $750,000 sustained by Plaintiff as a result of Defendant's aiding and abetting the conversion of the Chang Escrow Funds;

(B)     punitive damages;

(C)     pre- and post-judgment interest Sections 687.01 and 55.03 of the Florida Statutes, Fla. Stat. §§ 687.01 and 55.03;

(D)     costs; and

(E)     such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff Chang hereby demands a trial by jury, on all issues triable by a jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

Dated: July 18, 2017                    Respectfully submitted,

**s/ Carl F. Schoeppl, Esq.**
Carl F. Schoeppl, Trial Counsel
Florida Bar No. 818518
*Counsel for Plaintiff Hsi "Mark" Chang*
**SCHOEPPL LAW, P.A.**
4651 North Federal Highway
Boca Raton, Florida 33431-5133
Telephone: (561) 394-8301
Facsimile: (561) 394-3121
E-Mail: carl@schoeppllaw.com

34

*Hsi Chang aka Mark Chang v. JPMorgan Chase Bank, N.A.*,
**CASE NO. 1:14-Civ-20368-KMM**
**Second Amended Complaint for Monetary Damages and Other Relief**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 18, 2017, a true and correct copy of the foregoing

document was served on all counsel or parties of record as set forth in the Service List below.

**s/ Carl F. Schoeppl, Esq.**
Carl F. Schoeppl. Esq.
*One of the Attorneys for*
*Plaintiff Hsi "Mark" Chang*

| Party | Method of Service | Name, Address, Telephone, and Facsimile of Party's Counsel |
|---|---|---|
| JPMorgan Chase Bank, N.A., *Defendant* | CM/ECF | Jose A. Ortiz, Esq. Andrew Herron, Esq. Brian Lechich, Esq. Herron Ortiz 255 Alhambra Circle, Suite 1060 Coral Gables, FL 33134 Telephone: (305) 779-8100 Facsimile: (305) 779-8104 Email: jortiz@herronortiz.com Email: aherron@herronortiz.com Email: blechich@herronortiz.com |

A:\Chang-JPMorgan Chase CLOUD\Pleadings(CLOUD)\Second Amended Complaint for filing 07 18 17\Complaint Second Amended 07 18 17 FINAL.wpd